UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CHARLES WYNN,                                        :

        Petitioner,         :        08 Civ. 3894 (RJS) (GWG)

  -v.-                                                       :        REPORT AND
                                                                                             RECOMMENDATION
JOHN B. LEMPKE,                                     :

        Respondent.      :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

      Charles Wynn, currently an inmate at the Great Meadow Correctional Facility in Comstock, New York, and proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On March 15, 2004, Wynn was convicted after a jury trial of sodomy, attempted rape, sexual abuse, assault, and burglary. He was sentenced to determinate, concurrent prison terms of 25 years for the sodomy and burglary counts, a determinate, consecutive sentence of 10 years for the attempted rape count, and a determinate, concurrent sentence of seven years for the sexual abuse count. For the reasons stated below, the petition should be denied.

I.    BACKGROUND

      As is explained in section III.A below, the only viable claim before this Court relates to jury selection and thus we discuss the facts of that claim in detail next. With respect to the evidence at trial, the victim testified that on March 25, 2003, she was delivering meals in midtown Manhattan when a light-skinned black male, 6'0" and 200 pounds, approached her as she was entering a building and asked for her telephone number. After the man gave her a piece of paper with his phone number, he pushed his way inside the building, began choking and

punching her, pulled down her pants, and ejaculated on her. DNA extracted from the semen matched Wynn's DNA. At a lineup, the victim stated that Wynn, who was 5'11" and weighed 215 pounds, "looked like" the man who attacked her, although she could not positively identify him.

    A.    Jury Selection

After the first panel of jurors was selected and questioned, the prosecutor exercised peremptory challenges against four of the first 12 panelists: Nancy Artis, Warren Gordon, Charles Moore, and Nelly Capo. (3/3/04 Tr. 141).[1] Artis had a Master's Degree and was African-American; Gordon and Moore had no college education and were African-American; and Capo was Hispanic and had no college education. (3/2/04 Tr. 104, 107, 112, 115; 3/3/04 Tr. 141-42). Wynn's lawyer made an objection under Batson v. Kentucky, 47 U.S. 79 (1986), based on the use of peremptory challenges against "three black jurors and one Hispanic female." (3/3/04 Tr. 142).[2] The trial judge stated that different groups should not be "lumped" together,

---

[1] The transcripts from the state court proceedings have been filed as a single volume, which includes trial and sentencing. See Trial Transcript, filed Sept. 15, 2008 (Docket # 8) (under seal). We refer to these as "Tr." and "S." respectively. We cite the trial transcripts by the particular date of the trial.

[2] Batson sets out a framework to

> employ when ascertaining whether a particular peremptory strike of a jury panelist is based on an impermissible discriminatory motive in violation of the Equal Protection Clause of the Fourteenth Amendment. Initially, upon the assertion of an objection that a peremptory strike has been exercised in an unlawfully discriminatory manner, the movant must make a prima facie showing of circumstances that generate an inference that the relevant panelist was stricken on improper grounds. An oft-used method for such a showing is the description or discernment of a "pattern" of strikes against panelists who are members of particular

2

and that the challenge to one Hispanic was not suspicious. (3/3/04 Tr. 142). The trial judge then noted that three of four challenged panel members were African-American, stated that this created a "pattern," and asked the prosecutor to provide a neutral explanation for these challenges. (3/3/04 Tr. 142). Ultimately, the prosecutor provided an explanation as to all four jurors and the trial judge ruled on those explanations.

The prosecutor explained that he had struck Gordon, Moore, and Capo because "there [was] going to be complex, scientific testimony, DNA, which is difficult to understand" and so he had used a "benchmark" of two years of college to pick jurors. (3/3/04 Tr. 142-43). He noted that the white panelists that were not challenged all had "at least two years of college." (3/3/04 Tr. 143).

As to Artis, the prosecutor explained that he had noted that she had "glared intensively" at an Assistant District Attorney, and had learned that a defendant named Artis had been prosecuted by that Assistant District Attorney several years previously. (3/3/04 Tr. 143-44). The prosecutor stated that "I voir dired the panel, and I believe I asked Ms. Artis especially if anyone had any family members who were prosecuted by this office, and she didn't respond." (3/3/04 Tr. 144). Thus, the prosecutor stated that it was "highly likely" that the two Artises were related. (3/3/04 Tr. 144-45). Wynn's attorney called this explanation "ridiculous," stated that because Artis wore thick glasses and was behind a podium, she would not have been able to see the other Assistant District Attorney, and asked to have Artis questioned about the matter. (3/3/04 Tr. 145).

---

protected groups.

Messiah v. Duncan, 435 F.3d 186, 194 (2d Cir. 2006) (internal citations omitted).

The trial judge found the prosecutor's explanations credible and accepted them.  (3/3/04 Tr. 145-46).  In doing so, she noted that another African-American panel member who had a Master's Degree had not been struck by the prosecutor.  (3/3/04 Tr. 146).

During the next round of challenges, the prosecutor struck a white female juror with no college education and a Spanish female juror with no college education.  (3/3/04 Tr. 147–48).  Wynn's attorney again made a <u>Batson</u> challenge, this time on the grounds that the prosecutor was striking "minority jurors who were not educated."  (3/3/04 Tr. 147-48).  The prosecutor noted that two Hispanic jurors with only two years of college had not been struck.  (3/3/04 Tr. 148).  Again, the trial court found the education limitation to be "not pretext[ual]."  (3/3/04 Tr. 148).

During the next round, defense counsel raised a <u>Batson</u> objection as to the striking of an additional African-American male with no college education.  (3/3/04 Tr. 149-150).  The prosecutor noted that there were already three African-American jurors with degrees who were selected without objection.  (3/3/04 Tr. 150).  The trial judge denied the challenge again, finding that it was not pretextual.  (3/3/04 Tr. 150).

Jury selection then continued until completed.  (3/3/04 Tr. 150-217).

B.      Verdict, Sentencing, and Appeal

On March 15, 2004, Wynn was convicted by the jury of sodomy in the first degree, burglary in the first degree, attempted rape in the first degree, sexual abuse in the first degree, and assault in the second degree.  (3/15/04 Tr. 554-56).  At sentencing, the judge found Wynn to be a second violent felony offender and sentenced him to determinate, concurrent prison terms of 25 years for the sodomy and burglary counts, a determinate, consecutive sentence of 10 years for

4

the attempted rape count, and a determinate, concurrent sentence of seven years for the sexual abuse count. (S. 6, 17-19).

On direct appeal, Wynn raised four issues: (1) the evidence was legally insufficient to prove attempted rape; (2) Wynn's right to a trial by jury was violated when a sworn juror was discharged who was not "unavailable for continued service nor grossly unqualified"; (3) the trial court violated Wynn's equal protect rights when it rejected the defense's Batson challenge to the prosecutor's use of peremptory challenges to African-American panel members; and (4) that the imposition of the consecutive sentences for sodomy and attempted rape violated Wynn's Fifth and Fourteenth Amendment rights. See Brief for Defendant-Appellant (annexed as Ex. A to Declaration in Opposition to the Petition For a Writ of Habeas Corpus, filed Sept. 15, 2008 (Docket # 7) (under seal) ("Steward Decl.")) ("Pet. App. Br."), at 19-41.

On December 19, 2006, the First Department affirmed the judgment. See People v. Wynn, 35 A.D.3d 283 (1st Dep't 2006). The court found the sufficiency argument was unpreserved, and declined to review it in the interest of justice. Id. at 283. Also, it found the trial court properly: (1) discharged the sworn juror; (2) rejected the Batson challenge; and (3) imposed consecutive sentences for the sodomy and attempted rape violations. Id. at 284.

On February 5, 2007, Wynn sought leave to appeal to the Court of Appeals. See Letter from Cheryl Williams, Associate Appellate Counsel, Legal Aid Society to Hon. Victoria A. Graffeo, Associate Judge, Court of Appeals (Feb. 5, 2007) (annexed as Ex. D to Steward Decl.) ("Leave App. Let."). The letter seeking leave to appeal sought review only of the Batson issue. Id. On March 13, 2007, the request for leave to appeal was denied. People v. Wynn, 8 N.Y.3d 928 (2007).

C.     Federal Court Proceedings

On March 25, 2008, Wynn signed the instant petition for a writ of habeas corpus. See Petition for Writ of Habeas Corpus, filed Apr. 25, 2008 (Docket # 2) ("Pet."), at 1; Affidavit of Charles Wynn (annexed to Pet.). The petition alleges the same four grounds that were raised in his state appellate brief. Id. On September 15, 2008, the respondent filed a memorandum in opposition to the petition. See Respondent's Memorandum of Law in Opposition to the Petition For a Writ of Habeas Corpus, filed Sept. 15, 2008 (Docket # 7) (under seal). Wynn did not submit a traverse.[3]

II.    APPLICABLE LAW

A.     Review of Claims in Habeas Corpus Petitions

A petition for a writ of habeas corpus may not be granted with respect to any claim that has been "adjudicated on the merits" in the state courts unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

[3] On March 1, 2008, prior to the filing of the action in this court, Wynn signed a habeas corpus petition that was filed in the Northern District of New York and that challenges the same conviction. See Petition For a Writ of Habeas Corpus, No. 08 Civ. 301, filed Mar. 17, 2008 (N.D.N.Y. Docket # 1). In a letter to the Northern District court dated June 11, 2008, Wynn acknowledged that he had "sent in my claim to the incorrect location" and requested that the petition be withdrawn. See Letter from Charles Wynn to United States District Court, N.D.N.Y. (Jun. 11, 2008), No. 08 Civ. 301, filed June 18, 2008 (N.D.N.Y. Docket # 4). The Northern District transferred the action to the Southern District of New York and denied the request as moot. See Order, No. 08 Civ. 301, filed July 28, 2008 (N.D.N.Y. Docket # 5). The transferred case was assigned docket number of 08 Civ. 8807. In light of Wynn's request, the 08 Civ. 8807 petition should be dismissed.

For a claim to be adjudicated "on the merits" within the meaning of 28 U.S.C. § 2254(d), it must "finally resolv[e] the parties' claims, with res judicata effect," and it must be "based on the substance of the claim advanced, rather than on a procedural, or other, ground." Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir. 2001) (citations omitted). As long as "there is nothing in its decision to indicate that the claims were decided on anything but substantive grounds," a state court decision will be considered to be "adjudicated on the merits" even if it fails to mention the federal claim and no relevant federal case law is cited. Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001); accord Rosa v. McCray, 396 F.3d 210, 220 (2d Cir.) ("This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether the court has alluded to federal law in its decision."), cert. denied, 546 U.S. 889 (2005). Moreover, a state court's determination of a factual issue is "presumed to be correct," and that presumption may be rebutted only "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In Williams v. Taylor, 529 U.S. 362 (2000), the Supreme Court held that a state court decision is "contrary to" clearly established federal law only "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different result. 529 U.S. at 405-06. Williams also held that habeas relief is available under the "'unreasonable application'" clause only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

7

incorrectly." Id. at 411.  Rather, the state court's application must have been "objectively unreasonable." Id. at 409.

Only holdings of the Supreme Court are considered for purposes of determining "clearly established Federal law."  See Rodriguez v. Miller, 537 F.3d 102, 106-07 (2d Cir. 2008).  Thus, "[n]o principle of constitutional law grounded solely in the holdings of the various courts of appeals or even in the dicta of the Supreme Court can provide the basis for habeas relief."  Id.

     B.     Requirement of Exhaustion

Habeas corpus relief under 28 U.S.C. § 2254 is available to a petitioner held in state custody in violation of the Constitution or a federal law or treaty.  See 28 U.S.C. § 2254(a). "Before a federal court may grant habeas relief to a state prisoner," however, "the prisoner must exhaust his remedies in state court."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. § 2254(b)(1)(A).  The Supreme Court has held that:

> [b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

O'Sullivan, 526 U.S. at 845; accord Smith v. Duncan, 411 F.3d 340, 347 (2d Cir. 2005).  Thus, a petitioner is required to have presented each claim to all available levels of the state courts.  See, e.g., Baldwin v. Reese, 541 U.S. 27, 29 (2004) ("the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review)") (citations and internal quotation marks omitted).  The petitioner also must have fairly presented the "federal nature" of each claim to the state courts.  Id.; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam); Rosa, 396 F.3d at 217.

III.   DISCUSSION

   A.   Unexhausted Claims

As noted, Wynn presented only the Batson claim in his letter to the Court of Appeals seeking leave to appeal. See Leave App. Let. Wynn has thus failed to present the remaining three claims in his petition to each available level of the state courts – a prerequisite to habeas relief. See, e.g., Baldwin, 541 U.S. at 29. It is no longer possible for Wynn to exhaust these three claims under New York law, however, either by direct or collateral review. "Further direct review by the Court of Appeals is no longer available," because New York law permits "only one request for review of a conviction." See St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004), cert. denied, 543 U.S. 1058 (2005); accord Jones v. Keane, 329 F.3d 290, 296 (2d Cir.), cert. denied, 540 U.S. 1046 (2003).[4] Nor can Wynn bring these claims as collateral attacks on

---

[4] In support of this holding, these cases cite to former N.Y. Court Rules § 500.10(a) (2005), which limited criminal defendants to one leave application. While this rule was repealed as of September 1, 2005, and its recodification, see N.Y. Court Rules § 500.20 (2009), does not explicitly refer to the one-leave-application limitation, the limitation may be derived from an interpretation of the statute allowing for leave applications, see N.Y. Crim. Proc. Law § 460.20, and thus does not depend on the court rule, see, e.g., People v. Fullwood, 93 N.Y.2d 944 (1999) (citing to case interpreting former version of section 460.20). In any event, the Second Circuit in Smith viewed the recodified rule as similarly barring any new request for leave to appeal. See 411 F.3d at 345 & n.3.

Additionally, a new leave application would be separately barred by N.Y. Crim. Proc. Law § 460.10(5)(a), which sets a 30-day deadline to seek leave from the date of service of the Appellate Division order. While a court has the power to grant an extension for limited reasons not raised here, if the application is made within one year of the deadline, see N.Y. Crim. Proc. Law § 460.30(1), the Appellate Division's final decision in Wynn's case was rendered on December 19, 2006. Therefore, any new application for leave to appeal would be untimely. The decision in Pesina v. Johnson, 913 F.2d 53 (2d Cir. 1990) (per curiam), which refused to determine whether the New York State courts would find an application for leave to appeal to the Appellate Division time-barred, does not require a different result because it was construing a different subsection of N.Y. Crim. Proc. Law § 460.10.

9

his conviction inasmuch as they were already raised on his direct appeal and are thus barred by N.Y. Crim. Proc. Law § 440.10(2)(a). See, e.g., Ramirez v. Att'y Gen. of State of N.Y., 280 F.3d 87, 89-90 (2d Cir. 2001).

In such a situation, case law reflects that the unexhausted claim will be "deemed exhausted." St. Helen, 374 F.3d at 183 (citing Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991)); accord Coleman, 501 U.S. at 735 n.1. However, "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim." Gray v. Neth., 518 U.S. 152, 162 (1996); accord Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir. 2006); Smith, 411 F.3d at 347. "In the case of procedural default (including where an unexhausted claim no longer can proceed in state court), we may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent.'" St. Helen, 374 F.3d at 184 (quoting Bousley v. United States, 523 U.S. 614, 622 (1998)).

Wynn has failed to show any cause for his default. Notably, the failure of counsel to raise these claims in the leave letter cannot constitute cause for this default because, among other reasons, there is no right to counsel for discretionary appeals. See DiGuglielmo v. Smith, 366 F.3d 130, 135 (2004) (failure of counsel to seek leave to appeal cannot constitute "cause" for a procedural default). Nor has Wynn shown he is actually innocent. Accordingly, the three claims not raised in the leave letter are procedurally defaulted and only the Batson claim is properly before this Court.

B.  The Batson Claim

Under Batson, there is a three-step process for determining whether a peremptory

10

challenge has been exercised discriminatorily:

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

Hernandez v. New York, 500 U.S. 352, 358-59 (1991) (citing Batson, 476 U.S. at 96-98); accord Messiah, 435 F.3d at 194. The "race-neutral explanation need not be 'persuasive, or even plausible' for the non-movant to meet his obligation at step two of the Batson procedure and thereby advance the inquiry to the third step." Messiah, 435 F.3d at 195 (quoting Purkett v. Elem, 514 U.S. 765, 768 (1995)). The third step "requires a trial judge to make an ultimate determination on the issue of discriminatory intent based on all the facts and circumstances." Id. (quoting Jordan v. Lefevre, 206 F.3d 196, 200 (2d Cir. 2000)). "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." Purkett, 514 U.S. at 768.

On habeas review, a trial judge's acceptance of a prosecutor's race-neutral explanation will be disturbed only if it "'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Messiah, 435 F.3d at 198 (quoting 28 U.S.C. § 2254(d)(2)); accord Rice v. Collins, 546 U.S. 333, 339 (2006) ("a federal habeas court can only grant [petitioner's] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the Batson challenge."). Even before the statutory standard of review was enacted, federal courts gave "great deference" to state trial court Batson rulings because "the best evidence of the credibility vel non of a race-neutral explanation will often be the demeanor of the attorney who exercises the challenge, and such evaluations of demeanor lie peculiarly

within a trial judge's province." Messiah, 435 F.3d at 196 (citations, quotation marks, and brackets omitted).

Here, it is not disputed that the defendant made a prima facie case of discrimination and that the prosecutor provided a facially race-neutral explanation for his strikes. Accordingly, the question becomes whether the trial judge's determination that those explanations were not pretextual was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As previously noted, a state court's findings of fact are "presumed to be correct" and the habeas petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

With respect to each explanation for a peremptory challenge provided by the prosecutor here, the trial judge made the requisite credibility determination. Notably, a trial judge "is not compelled to make intricate factual findings in connection with its ruling in order to comply with Batson. As long as a trial judge affords the parties a reasonable opportunity to make their respective records, he may express his Batson ruling on the credibility of a proffered race-neutral explanation in the form of a clear rejection or acceptance of a Batson challenge." Messiah, 435 F.3d at 198 (internal citations omitted).

With respect to Artis, the trial judge credited the prosecutor's explanations for the strike. (3/3/04 Tr. 145-46). These explanations consisted of the claim that the Artis was "glar[ing] intensively" at an Assistant District Attorney and the possibility – supported by a shared last name in the District Attorney's records – that this panel member was related to someone previously prosecuted by the office. (3/3/04 Tr. 143-45). There is no basis on which to disturb

12

the Court's factual finding.  Wynn's state appellate brief contends that the prosecutor inaccurately claimed to have questioned Artis specifically as to family members who had been prosecuted.  Pet. App. Br. at 32-33.  But it is not clear from the prosecutor's statement that he meant to claim that he had singled out Artis for this question.  (3/3/04 Tr. 144).  Plainly defense counsel and the judge were aware of the questions that were posed to the panel by the prosecutor, and the record reflects that the question was asked to the panel generally and that no response from Artis followed this question.  (3/2/04 Tr. 76).  Moreover, the prosecutor also struck the juror because she was "glaring," which can constitute an acceptable race-neutral basis for a challenge.  See generally Green v. Travis, 414 F.3d 288, 300 (2d Cir. 2005) (holding "the unfavorable demeanor of a venireperson has been held to be a race-neutral explanation for a peremptory challenge.").

      The remaining determinations by the trial judge that the strikes were not racially motivated centered on the prosecutor's explanation for these strikes: namely, that he wanted jurors with at least two years of college to have some assurance that they could understand the DNA evidence.  (3/3/04 Tr. 142-43, 145-50).  To the extent Wynn challenges this explanation on the ground that the prosecutor's educational litmus test had a discriminatory impact on minority jurors, the Supreme Court has held that a Batson challenge requires intentional discrimination, and that a peremptory strike will not be found discriminatory merely based on an explanation that results in a racially discriminatory impact.  See Hernandez, 500 U.S. at 360 ("'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."

(quoting Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 279 (1979))).

The prosecutor's stated desire for jurors with some college education was based on the purported existence of "complex, scientific testimony, DNA, which is difficult to understand" that would be crucial to the case. (3/3/04 Tr. 142-43). While Wynn challenged the logic of this premise in his brief on direct appeal, Pet. App. Br. at 33-36, the question is not whether the premise is demonstrably true but rather whether the prosecutor used it as a pretext to engage in racial discrimination. And the issue before this Court is even narrower: whether, in light of the state court record, the trial judge unreasonably concluded that the premise was not being used as a pretext for discrimination. Here, the record reflected that the white panelists that were not challenged all had "at least two years of college," and that three African-American and two Hispanic jurors, all with more than two years of college education, were not challenged. (3/3/04 Tr. 143, 148-50). Additionally, the prosecutor struck at least one white panel member on the basis of her limited education. (3/3/04 Tr. 148). Given these facts, Wynn simply has not rebutted by clear and convincing evidence the presumption that trial court correctly found that the prosecutor was not using education as a pretext for discrimination.. This conclusion is in accord with numerous courts that have upheld the rejection of Batson challenges to a prosecutor's decision to take into account education in making peremptory strikes. See, e.g., Caldwell v. Maloney, 159 F.3d 639, 654 (1st Cir. 1998) ("Challenges based on low levels of formal education have frequently been accepted over a Batson objection."); United States v. Marin, 7 F.3d 679, 686 (7th Cir. 1993) ("The attainment of a certain educational level has been accepted by numerous circuits as a race-neutral criterion for exercising a peremptory challenge under the Batson mandate, and, as far as we can determine, has been rejected by none.")

(collecting cases); Swift v. Goord, 2004 WL 2434966, at *6-7 (S.D.N.Y. Nov. 1, 2004) (upholding prosecutor's use of education as a race-neutral criterion).

In his state appellate brief, Pet. App. Br. at 35, Wynn relied on People v. Duncan, 177 A.D.2d 187, 194-95 (4th Dep't 1992). In that case, the prosecutor had struck an African-American who was a monitor technician because of the prosecutor's view that monitor technicians "really don't give a damn." 177 A.D.2d at 194. The Appellate Division found that this explanation was "not . . . sufficient to rebut the inference of purposeful racial discrimination" because "[t]he prosecutor did not relate his concerns about the prospective juror's employment to the factual circumstances of the case." Id. at 194-95. It specifically noted, however, that "[a] person's employment or lack of employment may, in an appropriate case, constitute a legitimate race-neutral reason for exclusion." Id. at 194. The Duncan decision does not alter the result here because the Appellate Division of New York's Supreme Court, unlike a federal habeas court, has the power to find facts in matters not determined by a jury. See, e.g., People v. Neely, 219 A.D.2d 444, 447 (2d Dep't 1996). In addition, while the Duncan court stated that it rejected the trial court's finding after giving it "great deference," the standard in 28 U.S.C. § 2254(d) is much more exacting. Finally, a claim that a juror who has not achieved a particular educational level would be less able to understand DNA evidence is far more worthy of belief than the claim, made in Duncan, that monitor technicians as a group are unsuitable as jurors. 177 A.D.2d at 194-95.

In sum, Wynn has not demonstrated by clear and convincing evidence that the trial court made an unreasonable determination of fact when it found that the prosecutor's reasons for exercising the peremptory challenges were not pretexts for racial discrimination.

Conclusion

For the foregoing reasons, Wynn's petition should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Hon. Richard J. Sullivan, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Sullivan. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985).

Dated: April 10, 2009
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copies sent to:

Charles Wynn
04-A-1964
Great Meadow Correctional Facility
11739 State Route 22
P.O. Box 51
Comstock, NY 12821-0051

Priscilla Steward
Assistant Attorney General
120 Broadway
New York, NY 10271-0332